## JOHN A. DAVENPORT & WIFE vs. MILLER BROTHERS.

SUPREME COURT, AUSTIN TERM, 1883.

*Lien on Land—Subrogation.*—A person holding a junior lien, for his own protection may satisfy a debt secured by a prior lien,and he will be subrogated to the rights of the holder of the prior lien, without becoming the owner of the land upon which the prior lien exists.

*Receivers—Appointment of.*—District Courts have the right to appoint receivers only when no other adequate remedy is given by law for the protection and preservation of property, or the rights of parties therein, pending litigation in respect thereto.

Appeal from Coryell County.

*Battle & Battle, Clark & Dyer* for appellants.

*Harris & Saunders* for appellees.

Opinion by Stayton, J.

The land, the sale of which was sought to be enjoined, was bought by John A. Davenport from W. W. Webb on the 11th May 1875, and to secure the purchase money unpaid, Davenport executed a note to Webb for eleven hundred dollars.

In a suit in the district court for Coryell county in which W. W. Battle and both Davenport and Webb were parties, on Sept., 24th, 1882 (as stated in the statement of facts, which must be erroneous,for this cause was tried before that date, the true date being no doubt the 24th, Sept., 1880, as stated in the pleadings), a judgment was

rendered by which title to the land bought by Davenport was vested in Battle, as was the title to the note which Davenport had executed to Webb; but it was provided in the judgment that upon the payment to Battle of the note which Davenport had executed to Webb, title to the land should vest in Davenport.

Whether title to the note was in any other manner vested in Battle does not appear, and it becomes unnecessary to consider whether Davenport so renewed the note as to take it out of the bar of the statute of limitations; for that judgment fixed the liability of Davenport upon the note at the time of its rendition, and whatever right he had to the land depended upon his payment of that note. It seems that on June 8th, 1881 Davenport recognized Battle as the owner of the note executed to Webb, for it is claimed that on that day Davenport made a deed to Battle for the land in consideration of the cancellation of that note, and on August 22 1881, Davenport and his wife executed a deed to Battle, so as to pass title to so much of the land as was covered by the homestead, and this upon the same consideration.

It is evident that these conveyances were not intended to absolutely convey title to Battle, nor to relinquish any right the appellants had, for Battle's answer filed in this cause subsequent to the date of the deeds to him, in which he set up the fact, that the principal and interest on the note was still due to him, negatives such intention.

The agreement between Battle and Davenport by which Davenport was authorized to sell the land and out of the proceeds pay the amount due to Battle, and to appropriate the residue to his own use, the land being shown to be of value much greater than the sum due to Battle, also evidences the fact that the conveyance to Battle was only intended to put the title to the land in him as a security for the debt due to him as purchase money; and such is the practical effect of the testimony of Battle himself.

We therefore conclude that Battle held a superior outstanding lien upon the land, to that held by Miller Brothers, through the record of the judgment which they held against Davenport, and that Battle had not seen proper to exercise his right, upon failure of Davenport to pay the purchase money at the maturity of his note, to terminate the right of Davenport to pay for the land and have title.

The court below evidently so regarded the matter, for after direct-

ing the land to be sold and the proceeds thereof, so far as might be necessary, applied to the satisfaction of the amount due for the purchase money, and on the judgment in favor of Miller Brothers, directed that the residue, if any, be paid to Davenport. This could not have been, if Davenport had not been recognized as the owner of the land, subject to the lien for the payment of the purchase money.

Miller Brothers having paid to Battle the principal and interest due upon the purchase money note, under pleadings of Battle as well as their own, which prayed that they be subrogated to all the rights of Battle through his lien for the purchase money, it is claimed that they were not entitled to be subrogated to the rights of Battle, for the reason that they had only acquired the prior lien which Battle held, and had not acquired title to the land. As before said, the debt for the purchase money had never been paid and Battle held a lien upon the land, and in fact the title thereto, which could be divested only by payment of the purchase money.

It is well settled, that a person holding a junior lien for his own protection, may satisfy a debt secured by a prior lien, and that he will be subrogated to the rights of the holder of the prior lien; and to be so entitled it is not necessary that he should became the owner of the land upon which the prior lien exists. Jones on Mortgages 1064—1069, 878, 1080, 1137. Sheldon on Subrogation, 12, 15, 16, 17. In this case not only did Battle hold a prior lien upon the land, but under the decree of 24th Sept. 1880, he was the owner of the land, his title subject to be divested under the terms of that decree, only by the payment of the purchase money to him, which Davenport had agreed to pay Webb.

Under such state of facts it is not perceived, if Battle was willing to receive the amount of the purchase money from Miller Brothers and for the land to be sold to reimburse them, that Davenport and wife have any just cause to complain that the court so decreed.

Such relief as the appellees seek in this cause would seem to be peculiarly appropriate, when we consider that Battle could enforce his demand against all the land, including that which is claimed by the appellants as homestead, while the appellees could only subject to their claim only so much of the land as was not subject to the homestead claim.

Holding both the elder and junior liens the appellees can now as

they could have compelled Battle to do, subject all of the land to sale, and thereby so far as the proceeds of the property will do so, protect their junior lien by subjecting that part of the property which would not have been subject to their junior lien to the payment of the elder lien if necessary.

The court obviously intended by the appointment of a receiver to protect Davenport and wife, in so far as the same could be done, in any equity which may have arisen through the contracts made between them and Battle, but it is not perceived that there were any facts which called for the appointment of a receiver.

It is not shown that the lien holders were entitled to the rents or profit until a sale should be made under the decree, and that without resort to the same the land would not bring a sum sufficient to discharge the incumbrancies; but on the contrary the decree gives to the appellants the right to use the premises until the expiration of the time during which under their agreement with Battle they were to hold them, unless by their consent the receiver should sooner sell the same, and this without accounting therefor. In such a case a receiver should not be appointed.

Jones on Mortgages 15, 16.

The district courts have the power to appoint receivers in all proper cases; but it can only be done when no other adequate remedy is given by law for the protection and preservation of property or the rights of parties therein, pending litigation in respect thereto. R. S. 1461, 1470. No such case is shown by the record.

Receiverships necessarily involve an increase of expense, and parties should not be subjected thereto in any case, unless under the well settled principles of equity procedure, it becomes necessary to resort thereto for the protection of the interest of parties.

It is to be inferred from the record that the entire land sought to be subjected to sale is worth largely more than the sums for which it is incumbered, and the appellants are evidently occupying a part of it as their home, upon which valuable improvements have been made, and in order to do justice to all parties, without prejudice to any, we are are of the opinion that the court below should have caused two hundred acres of the land to be designated as the homestead, after which the excess of the land over the homestead should have been first subjected to sale, and the proceeds thereof applied to the payment of the sum due to appellees on account of their payment to

Battle, with interest thereon as provided in the note given by Davenport to Webb, and also the payment of the judgment in favor of Miller Brothers against Davenport with interest and costs due thereon, and the costs of the suit properly chargeable to the appellants, after which if the sum thus realized should not be sufficient to pay the matters aforesaid, that then the residue of the land be sold and so much of the proceeds of sale as may be necessary for that purpose be applied to the discharge of the matters above mentioned and that the remainder of such proceeds, if any, be paid to Davenport, such sales to be made by the sheriff and not by the receiver, whose appointment should be revoked.

The judgment will be rendered and remanded with instructions to the district court to enter a judgment in accordance with this opinion and it is accordingly so ordered.